UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TISHNELL DAVIS

                              Plaintiff,

          v.

CAROLYN W. COLVIN, [1] Commissioner of
 Social Security,

                              Defendant.

_____

**REPORT
and
RECOMMENDATION**

**14-CV-111V(F)**

APPEARANCES:          LAW OFFICES OF DENNIS CLARY
                      Attorneys for Plaintiff
                      DENNIS A. CLARY, of Counsel
                      755 Center Street, P.O. Box 1044
                      Lewiston, New York 14092

                      WILLIAM J. HOCHUL, JR.
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      VERNON NORWOOD
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202, and

                      STEPHEN P. CONTE
                      Regional Chief Counsel
                      United States Social Security Administration
                      Office of the General Counsel, of Counsel
                      26 Federal Plaza
                      Room 3904
                      New York, New York 10278

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on

August 22, 2014.[1] (Doc. No. 11).  The matter is presently before the court on motions

for judgment on the pleadings, filed on August 18, 2014, by Plaintiff (Doc. No. 9), and on

November 17, 2014, by Defendant (Doc. No. 14).

## BACKGROUND

Plaintiff Tishnell Davis, ("Plaintiff" or "Davis"), seeks review of Defendant's

decision denying her Social Security Disability Insurance ("SSDI"), and Supplemental

Security Income ("SSI") (together, "disability benefits") under, Titles II and XVI of the

Social Security Act ("the Act").  In denying Plaintiff's application for disability benefits,

Defendant determined that Plaintiff had the severe impairments of status post right

ankle fracture, interstitial cystitis, chronic pain syndrome, vision loss, major depressive

disorder, post-traumatic stress disorder, and bipolar disorder, but does not have an

impairment or combination of impairments within the Act's definition of impairment.  (R.

17).[2] Defendant further determined that Plaintiff had the residual functional capacity

("RFC"), to perform sedentary work with the limitation of not being capable of

understanding, remembering, or carrying out complex instructions, using judgment to

make complex work decisions, and able to frequently deal with coworkers, supervisors

and the general public.  (R. 21).  As such, Plaintiff was found not disabled, as defined in

---

[1] Hon. Richard J. Arcara reassigned the case to Hon. Lawrence J. Vilardo on November 23, 2015.
[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

the Act, at any time from the alleged onset date through the date of the Administrative

Law Judge's decision on December 26, 2012.

## PROCEDURAL HISTORY

Plaintiff filed her applications for disability benefits on February 5, 2009 (R. 259-72), that were initially denied by Defendant on July 8, 2009, and, pursuant to Plaintiff's request filed August 20, 2009 (R. 168), a hearing was held before Administrative Law Judge William Weir ("Weir" or "the ALJ"), on December 9, 2010, in Buffalo, New York. (R.86-134).  Plaintiff, represented by Lawrence Lindsay, Esq. ("Lindsay"), appeared and testified at the hearing.  (R.86-134). The ALJ's decision denying Plaintiff's claim was rendered on May 19, 2011.  (R. 137-63).

Plaintiff requested review by the Appeals Council, and the Appeals Council reversed the ALJ's original decision, and remanded the case for further proceedings. (R. 154-57).  A supplemental hearing was held on August 10, 2012, where Plaintiff again testified, along with vocational expert ("VE") Jay Steinbrenner ("Steinbrenner" or "VE").  (R. 87-134).  On December 26, 2012, the ALJ issued an unfavorable decision from which Plaintiff again requested review by the Appeals Council on January 4, 2013. (R. 10).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on January 7, 2014.  (R. 1-5).

This action followed on February 20, 2014, with Plaintiff alleging that the ALJ erred by failing to find her disabled.  (Doc. No. 1).

On August 18, 2014, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 9) ("Plaintiff's

Memorandum"). Defendant filed, on November 17, 2014, Defendant's motion for

judgment on the pleadings[2] ("Defendant's motion"), accompanied by a memorandum of

law (Doc. No. 14) ("Defendant's Memorandum"). Oral argument was deemed

unnecessary. Based on the following, Plaintiff's motion should be GRANTED as to

Plaintiff's motion for remand, and alternatively, DENIED as to Plaintiff's motion for

judgment on the pleadings.


### FACTS[3]

Plaintiff Tishnell Davis, ("Davis" or "Plaintiff"), was born on August 17, 1980, lives

with her parents and children, and completed high school and one year of college. (R.

41, 45). Plaintiff alleges that she is not able to work because she has difficulty

concentrating as a result of her medication, and that she is unable to stand for long

periods of time, walk, bend, lift, and remember things. (R. 42).

Relevant to psychiatric treatment records requested by order of the Appeals

Council on remand in this case (R. 155-57), on March 9, 2009, and May 7, 2009,

Plaintiff visited Dianna Bruno, PhD. ("Psychologist Bruno), a clinical psychologist, for a

psychiatric evaluation upon the referral of Plaintiff's primary care physician, Jennifer

Adamson, M.D. ("Dr. Adamson"). (R. 546). Psychologist Bruno noted that Plaintiff

reported nightmares, extreme anxiety, panic, severe depression and fitful sleep after

being molested by her cousins on a repeated basis at age three, and being raped at

age eleven. (R. 546). Plaintiff reported being physically, emotionally and verbally

---

[2] The Secretary did not file an answer in this action, but did file a copy of the administrative record. Both parties refer to the administrative record in their memoranda. Therefore, the undersigned construes the complaint to incorporate the administrative record for purposes of the instant motion.
[3] Taken from the pleadings and the administrative record.

abused by Plaintiff's boyfriend over a four-year period, that Plaintiff's boyfriend stabbed 18 of Plaintiff's family members, and continually harasses Plaintiff.  Plaintiff reported an attempted suicide nine years prior to the visit, and that she uses alcohol and cannabis to cope with her symptoms of anxiety and depression.  *Id.*  Upon examination, Psychologist Bruno assessed Plaintiff with anxious and depressed mood, sad affect, coherent, logical, and goal directed thought processes with flashbacks and depersonalization, impaired judgment, occasional loss of control, low self-esteem, and diagnosed Plaintiff with Axis I[4] post-traumatic stress disorder, Axis II denied, Axis III heart murmur, mitral valve prolapse, partial right eye vision, scoliosis, spina bifida and irritable bowel syndrome ("IBS"), Axis IV financial, and assessed Plaintiff with a global assessment of functioning ("GAF")[5] score of 51.  (R. 548).

On May 1, 2009, Thomas Ryan, PhD. ("Psychologist Ryan), completed a psychiatric evaluation on Plaintiff on behalf of the Social Security Administration, and assessed Plaintiff with coherent and directed thought processes, affect appropriate in speech and thought content with underlying depression and anxiety, dysthymic (depressed) mood, intact concentration and attention, intact remote and recent memory skills, average cognitive functioning, insight, and judgment, and noted that Plaintiff exhibited no significant limitations in her ability to follow and understand simple

---

[4]The DSM-IV multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information: Axis I, clinical disorders, Axis II; personality disorders, Axis III; general medical conditions, Axis IV; psychosocial and environmental stressors, and Axis V, global assessment of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders-IV-TR* ("DSM-IV"), at 27 (4th ed. 2000).

[5] The Global Assessment of Functioning ("GAF") scale is a numeric scale used to rate the functioning of adults.  A GAF score of 51-60 indicates moderate symptoms (*e.g.*, flat affect circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.,* few friends, conflicts with peers or co-workers).

directions, perform simple tasks, maintain attention and concentration, a regular schedule and learn new tasks, perform complex tasks, and make generally adequate daily decisions, with moderate limitations to Plaintiff's ability to interact with others and deal with stress.  (R. 518).  Psychologist Ryan opined that Plaintiff's psychiatric impairments may interfere with Plaintiff's ability to function on a daily basis, and diagnosed Plaintiff with Axis I post-traumatic stress disorder, and polysubstance abuse in remission, no diagnosis on Axis II, Axis III clogged arteries, heart murmur, bladder difficulties, impaired right eye vision, bilateral knee trouble, scoliosis, irritable bowel IBS, high cholesterol, high blood pressure, allergies, right ankle problems, headaches,  and gastroesophageal reflux disease ("GERD").   (R. 519).

On July 8, 2009, M. Totin, Psy.D., ("Dr. Totin"), a psychological consultant with the Social Security Administration, completed a psychiatric review technique on Plaintiff, and assessed Plaintiff with moderate restriction to Plaintiff's activities of daily living, difficulties in maintaining social functioning, maintaining concentration, persistence or pace, and no episodes of deterioration of extended duration.  (R. 579).  Upon completing a mental RFC assessment, Dr. Totin opined that Plaintiff was moderately limited in Plaintiff's ability to carry out detailed instructions, maintain concentration and attention for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without distraction, complete a normal workday and week without interruptions form psychologically based symptoms, interact appropriately with the general public, accept instructions and respond appropriately to supervisory criticism, respond appropriately to

5

changes in the work setting, and set realistic goals or make independent plans.  (R. 589-90).

That same day, G. Grabow, a single decision maker "(SDM)",[6] with the Social Security Administration, completed a physical residual functional capacity assessment on Plaintiff, and opined that Plaintiff was able to occasionally lift 10 pounds, and frequently lift 10 pounds, stand or walk at least 2 hours in an 8 hour day, sit with normal breaks for a total of 6 hours in an 8 hour day, and was unlimited in Plaintiff's ability to pull and push.  (R. 584).  SDM Grabow opined that there was no medical evidence to support the functional limitations put forth by Plaintiff, and that Plaintiff was not precluded from walking long distances.  (R. 587).

On September 16, 2009, Kalaiselvi Rajendran, M.D. (Dr. Rajendran"), a psychiatrist, completed a mental status examination on Plaintiff, and noted that Plaintiff reported hearing voices telling her to kill herself.  (R. 630).  Dr. Rajendran noted that Plaintiff was decompensating rapidly, and diagnosed Plaintiff with Axis I bipolar disorder mixed, rule out drug induced mood disorder, no diagnosis on Axis II or Axis III, Axis IV moderate to severe, and evaluated Plaintiff with an Axis V GAF score of 35.[7]  Dr. Rajendran assessed Plaintiff with very poor insight and judgment, and recommended that Plaintiff undergo hospitalization to treat Plaintiff's fear of losing control and hearing voices, and noted that Plaintiff needed to be drug free to afford proper psychiatric evaluation.  *Id.*

---

[6] Under a streamlined disability determination model, a single decision maker makes the initial disability determination and a claimant is able to proceed from an initial denial to ALJ review.

[7] A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.,* speech is at times illogical, obscure, or irrelevant), or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (*e.g.,* depressed adult avoids friends, neglects family, and is unable to work).

Plaintiff received psychiatric treatment at Niagara County Mental Health Clinic ("NCMHC"), for anxiety, mood swings, and depression for the period between February and May 2010 (R. 667-87), and underwent psychiatric treatment counseling with Matthew Davis at NCMHC during the same period where Plaintiff was consistently assessed with GAF scores of 55-60.  (R. 667-75).

On April 22, 2010, Ramon K. Tan, M.D. ("Dr. Tan"), a consultative psychiatrist at NCMHC, completed a psychiatric evaluation on Plaintiff and diagnosed Plaintiff with Axis I anxiety disorder not otherwise specified ("NOS"), depressive disorder NOS, and an Axis V GAF score of 60.  (R. 702).

On May 17, 2010, Dham Gupta, M.D. ("Dr. Gupta"), a consultative psychiatrist at NCMHC, completed a medication review on Plaintiff, and increased Plaintiff's Lexapro dosage from 10 milligrams to 20 milligrams.  (R. 700).

For the period between April 28 and August 26, 2011, Plaintiff received psychotherapy treatment from Mackenzie Halker ("Ms. Halker"), a social worker with NCMHC (R. 826-43, 867-69, 883-87), where Plaintiff was treated for Plaintiff's bipolar disorder and consistently evaluated with a GAF score of 52.  On August 3, 2011, at the request of Plaintiff's attorney, Ms. Halker completed a psychiatric report and assessed Plaintiff with marked difficulty to Plaintiff's ability to groom, pay bills, complete maintenance tasks, use public transportation, plan daily activities, communicate clearly and effectively, get along with family members, friends, and neighbors, show consideration for others, display awareness of other's feelings, cooperate with others, exhibit social maturity, cooperate with coworkers, respond to supervisors and those in authority, respond without fear to strangers, establish interpersonal relationships, hold a

7

job, avoid altercations, interact and participate actively in group activities, concentrate, persist in completing tasks, and Plaintiff's ability to assume increased mental demands associated with competitive work. (R. 874-75). Ms. Halker opined that Plaintiff experienced repeated episodes of decompensation in work and work-like settings as a result of Plaintiff's mood swings and that Plaintiff had no memory of her mood swing episodes. (R. 875), evaluated Plaintiff with a GAF score of 52 (R. 877), and noted that Plaintiff had a marked limitation in Plaintiff's ability to understand, remember, and carry out instructions, respond to supervision, and respond appropriately to coworkers, comport with normal quality, production, and attendance standards for work, respond to customary work pressure, and perform tasks on a sustained basis necessary for full-time work. (R. 879-80).

On August, 8, 2011, Kevin Demy, M.D. ("Dr. Demy"), a consultative psychiatrist with NCMHC, provided a medication evaluation and psychotherapy for Plaintiff who reported increased stress, hearing voices in her head more frequently, and significant problems controlling her behavior. Plaintiff reported that she "jumps just about everyone now," worries about getting into trouble with the police, and is constantly irritable and annoyed by everything around her. Plaintiff further reported that when she experiences extreme aggression she is unable to remember what has taken place, leading Dr. Demy to prescribe Zoloft (depression) for Plaintiff. (R. 881).

On November 30, 2011, Esat Cirpili, M.D. ("Dr. Cirpili"), a psychiatrist with NCMHC, completed a psychiatric examination on Plaintiff who reported feeling edgy and angry, depressed and short fused. (R. 974). Dr. Cirpili diagnosed Plaintiff with Axis I bipolar disorder, and assessed Plaintiff with a GAF score of 52. *Id.* On March 22,

2012, Dr. Cirpili completed a medical examination for employability assessment on Plaintiff, and opined that Plaintiff was very limited in Plaintiff's ability to maintain attention and concertation, interact appropriately with others, maintain socially appropriate behavior without exhibiting behavioral extremes, and Plaintiff's ability to function in a work like setting.  (R. 812).  Dr. Cirpili opined that Plaintiff had severe anger management problems with severe agitation.  *Id*.

On March 23, 2012, Psychologist Ryan completed a consultative psychiatric evaluation on Plaintiff, and assessed Plaintiff with the ability to follow and understand simple directions, maintain concentration and attention, maintain a regular schedule and learn new tasks, and opined that Plaintiff may have mild limitation to perform complex tasks, make adequate decisions at times, relate with others, and deal with stress, consistent with Plaintiff's psychiatric problems that may interfere with Plaintiff's ability to function on a daily basis. (R. 800).  On March 27, 2012, Psychologist Ryan completed a medical source statement, and opined that Plaintiff had no difficulty making judgments on simple work-related decisions, and understanding, remembering, and carrying out simple instruction, that Plaintiff had mild limitations to her ability to interact appropriately with the general public and co-workers and supervisors, and Plaintiff's ability to respond appropriately to usual work situation.  (R. 803).

On May 4, 2012, Jolene Sparacino ("Ms. Sparacino"), a psychotherapist with NCMHC, completed a psychiatric report and mental RFC assessment at the request of Plaintiff's attorney (R. 1006-12), and assessed Plaintiff with marked restriction to Plaintiff's ability to maintain social functioning, concentration, persistence and pace that resulted in Plaintiff's failure to complete tasks in a timely manner, and reported that

Plaintiff experienced episodes of deterioration or decompensation that caused Plaintiff to withdraw from situations and experience an exacerbation of Plaintiff's mental health symptoms on three or more occasions, a moderate limitation to Plaintiff's ability to remember and carry out instructions, and respond appropriately to supervision and co-workers, and a severe limitation to Plaintiff's ability to satisfy a normal employer's quality, production and attendance standards, and respond to customary pressures of work, or perform full-time work on a sustained basis.  (R. 1009).  Ms. Sparacino noted that Plaintiff experienced severe anger, reacted to even mild stimuli, had a history of assaults, and experienced periods of blackouts.  *Id.*

## **DISCUSSION**

### 1.     **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

A.      **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion."  *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).  If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§  405(g) and

1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.* The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also*

*Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646

F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in

Appendix 1, the Commissioner must then consider the applicant's "residual functional

capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e).  If

the applicant can still perform work he or she has done in the past, the applicant will be

denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past

work, the Commissioner will consider the individual's "residual functional capacity," age,

education and past work experience in order to determine whether the applicant can

perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also*

*Berry*, 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must

show that he is without "the residual functional capacity to perform [her] past work").  If

the Commissioner finds that the applicant cannot perform any other work, the applicant

is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g),

416.920(g).  The applicant bears the burden of proof as to the first four steps, while the

Commissioner bears the burden of proof on the final step relating to other employment.

*Berry,* 675 F2d at 467.  In reviewing the administrative finding, the court must follow the

five-step analysis to determine if there was substantial evidence on which the

Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.**   **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity.

"Substantial gainful activity" is defined as "work that involves doing significant and

productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).

Substantial work activity includes work activity that is done on a part-time basis even if it

includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In the instant case, the ALJ determined that Plaintiff had not

engaged in substantial gainful activity since December 31, 2007, the date of Plaintiff's

alleged onset of disability.  (R. 16).  Plaintiff does not contest this determination.

## C.    <u>Severe Physical or Mental Impairment</u>

The second step of the analysis requires a determination whether Plaintiff had a

severe medically determinable physical or mental impairment that meets the duration

requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do

"basic work activities."  The Act defines "basic work activities" as "abilities and aptitudes

necessary to do most jobs," and includes physical functions like walking, standing,

sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing,

hearing, and speaking; understanding, carrying out, and remembering simple

instructions; use of judgment; responding appropriately to supervision, co-workers and

usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§

404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff has the severe impairments of right

status post right ankle fracture, interstitial cystitis, chronic pain syndrome, vision loss,

major depressive disorder, posttraumatic stress disorder, and bipolar disorder, but that

Plaintiff's GERD, IBS, spina bifida, scoliosis, diabetes, heart disease, asthma, and high

cholesterol are not severe impairments as defined under 20 C.F.R. § 404.920(c), and

that none of Plaintiff's severe impairments, either alone or in combination met or equaled a listed impairment.  (R. 17-20).  Plaintiff does not contest the ALJ's step two disability finding.

## D.    Listing of Impairments, Appendix 1

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04A3 ("§ 12.04A3") (Bipolar syndrome), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.06 ("§ 12.06A5") (Anxiety related to post-traumatic stress).  Although Plaintiff does not contest the ALJ's finding that Plaintiff is unable to provide substantial evidence to support that Plaintiff meets the criteria for disability under the listed impairments, substantial evidence establishes that Plaintiff is disabled under § 12.04 and 12.06 such that Plaintiff is disabled.

## § 12.04A3 – Affective Disorder - Bipolar syndrome

As relevant, disability based on an affective disorder requires

A.  Medically documented findings of at least one of the following:
* * *

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes(and currently characterized by either or both syndromes);
AND
B.  Resulting in at least two of the following:
1.  Marked restriction of activities of daily living; or
2.  Marked difficulties in maintaining social functioning; or
3.  Marked difficulties in maintaining concentration, persistence, or pace; or
4.  Repeated episodes of decompensation each of extended duration. . .

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04.

The record in this case establishes that Plaintiff is disabled based on anxiety under the criteria set forth in § 12.04A and B(2) and (3).  As required under § 12.04A(3), that Plaintiff exhibited episodic periods manifested by the full symptoms of both manic and depressive syndromes, is well documented.  Specifically, Plaintiff received psychiatric treatment at NCMHC for anxiety, mood swings, and depression (R. 667-87), Dr. Tan diagnosed Plaintiff with Axis I anxiety disorder NOS, and depressive disorder NOS, and (R. 702), Dr. Demy noted that Plaintiff reported hearing voices in her head frequently, experienced significant problems controlling her behavior, worried about getting into trouble with the police, and was constantly irritable and annoyed by everything around her.  (R. 881).  Psychologist Bruno noted that Plaintiff reported nightmares, extreme anxiety, panic, and severe depression (R. 546), and Ms. Sparacino reported that Plaintiff experienced severe anger, reacted to even mild stimuli, had a history of assaults, and experienced periods of blackouts.  (R. 1009).  The record thus establishes that Plaintiff meets the preliminary criteria for disability under § 12.04A(3).  In addition to establishing the preliminary criteria under § 12.04A3, a claimant must meet two of four additional criteria (§§ 12.04B(1)(2)(3) or (4)), to be deemed disabled.  In this case, the record contains substantial evidence to establish that Plaintiff meets the criteria under §

16

12.04B(2) (marked difficulties in maintaining social functioning) and (3) (marked difficulties in maintaining concentration, persistence and pace).

"Social functioning" refers to an individual's capacity to interact independently, appropriately, effectively, and on a sustained basis with others, and lack of an ability to maintain social functioning may be demonstrated by a history of altercations, evictions, fear of strangers, avoidance of interpersonal relationships, or social isolation.  20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.00A2.  "Marked," when used as a standard of measuring the degree of a claimant's mental limitation, means more than moderate but less than extreme.  20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.00C. In this case, substantial evidence establishes that Plaintiff had "marked difficulties in maintaining social functioning" as required by § 12.04B2.

In particular, Dr. Cirpili noted Plaintiff had a "marked" limitation to Plaintiff's ability to maintain social functioning (R. 812), and Ms. Sparacino noted Plaintiff's history of assaults.  On August 3, 2011, Ms. Halker assessed Plaintiff with marked difficulty to communicating clearly and effectively, getting along with family members, friends, and neighbors, showing consideration for others, displaying awareness of other's feelings, cooperate with others, exhibiting social maturity, cooperating with coworkers, responding to supervisors and those in authority, responding without fear to strangers, establishing interpersonal relationships, holding a job, avoid altercations, interacting and participating actively in group activities.  (R. 874-75).  Such opinions, paired with the opinions of Psychologist Ryan and Dr. Totin, that Plaintiff exhibited "moderate" restrictions to Plaintiff's ability to maintain social functioning, supports that Plaintiff's bipolar syndrome resulted in more than a moderate limitation to Plaintiff's ability to

maintain social functioning such that Plaintiff meets the criteria required under § 12.04B2.

Substantial evidence also establishes that Plaintiff's bipolar syndrome resulted in a marked limitation to Plaintiff's ability to maintain concentration, persistence or pace as required under § 12.04B3.  "Concentration, persistence or pace" refers to the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Pt. 404, Subpt. P, Appendix A § 12.00C3.   In this case, on August 3, 2011, Ms. Halker evaluated Plaintiff with impaired concentration and persistence completing tasks that would result in impaired functioning in a work setting.  (R. 875).  On May 4, 2012, Ms. Sparacino assessed Plaintiff with a marked restriction to Plaintiff's ability to maintain concentration, persistence and pace that resulted in Plaintiff's failure to complete tasks in a timely manner.  (R. 1006-12).  Significantly, nothing in the record suggests that Plaintiff fabricated any of the limitations that resulted from Plaintiff's mental impairments. Plaintiff is therefore disabled insofar as she meets the Listing of Impairments criteria under § 12.04A3 (bipolar syndrome).

### § 12.06A5 Anxiety related to post-traumatic stress

As relevant, disability under § 12.06A5 requires the disability claimant provide evidence to establish a threshold criteria that includes recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 § 12.06A5.  In this case, Psychologist Bruno noted that Plaintiff reported nightmares, extreme anxiety, panic, severe depression, flashbacks, and fitful sleep after being molested by her cousins on a repeated basis at age three, and being

raped at age eleven.  (R. 546).  Plaintiff reported being physically, emotionally and verbally abused by Plaintiff's boyfriend over a four year period, that Plaintiff's boyfriend stabbed 18 of Plaintiff's family members, and continually harasses Plaintiff, and that she attempted suicide and used alcohol and cannabis to cope with her symptoms of anxiety and depression.  Psychologist Bruno assessed Plaintiff with anxious and depressed mood, sad affect, and diagnosed Plaintiff with post-traumatic stress disorder.  (R. 548).  Plaintiff also testified that she has difficulty with the voices in her head, and her mood swings, that it's difficult for her to be around people, and that she feels like someone is always looking at or watching her.  (R. 62).  Plaintiff thus meets the threshold criteria for disability under § 12.06A5.

As §§ 12.04A3 (bipolar syndrome) and 12.06A5 (anxiety related to post-traumatic stress), require the identical secondary criteria to establish disability, and Plaintiff meets the secondary criteria for disability under § 12.04A3 of the listed impairments, Discussion, *supra*, at 16-18, Plaintiff  also meets the secondary criteria for disability under § 12.06A5.  Accordingly, Plaintiff is disabled under §§ 12.04A3 and 12.06A5 of the listed impairments, and the matter should be remanded for calculation of benefits.  Should the district judge disagree with the foregoing recommendation, the undersigned proceeds to review Plaintiff's remaining contentions.

**Treating physician rule**

In this case, upon remand, the Appeals Council directed the ALJ to evaluate Plaintiff's mental impairments in accordance with the five step sequential disability review analysis defined under 20 C.F.R. § 404.1520a ("§ 404.1520a"), and include consideration of Plaintiff's mental impairments through the entirety of the ALJ's disability

analysis.  (R. 156).  The Appeals Council directed the ALJ to discuss the weight

afforded to the opinions of Dr. Totin and SDM Grabow as Plaintiff's non-treating

physicians,  and provide specific explanations to the ALJ's rejection of Dr. Totin's

opinion that the medical record supports Dr. Totin's opinion that Plaintiff has only

moderate limitations to Plaintiff's mental RFC, and Plaintiff is therefore able to work in a

low stress environment (R. 156), and the ALJ's rejection of SDM Grabow's opinion that

Plaintiff was limited to sedentary work with postural and environmental limitations.  (R.

154).  The ALJ assigned "great" weight to the opinions of Dr. Balderman (that Plaintiff

had no functional limitations), Dr. Miller (that Plaintiff had a moderate limitation for heavy

lifting, bending and carrying), Dr.  Nenno (that Plaintiff was capable of sedentary work),

Psychologist Ryan (that Plaintiff had only mild limitations), and Dr. Greenberg (that

Plaintiff was capable of performing sedentary work) (R. 24-25), "little" weight to Dr.

Cirpili's opinion that Plaintiff was very limited in her ability to maintain concentration and

attention, interact appropriately with others, maintain socially appropriate behavior

without exhibiting behavioral extremes, and was very limited in her ability to function in

the workplace at a consistent pace (R. 26), "some" weight to Dr. Totin's opinion that

Plaintiff would be able to function in a low stress work environment, and "little" weight to

the opinions of  Ms. Halker, and Ms. Sparacino (that Plaintiff had marked limitations to

her ability to perform work).  (R. 24-27).

Plaintiff contends that the ALJ violated the treating physician rule by affording

"some but not great" weight to Dr. Totin's opinion that Plaintiff was able to work only in a

low stress work environment, and by not providing what constitutes a low stress work

environment.  Plaintiff's Memorandum at 10.  Defendant maintains that the ALJ properly

afforded weight to Dr. Totin's opinion.  Defendant's Memorandum at 17-18.  The

undersigned proceeds to review Plaintiff's allegations under the rules set forth under 20

C.F.R. § 416.927(c) (§ 416.927(c)"), the treating physician's rule.

Under 20 C.F.R. § 416.927(c), ALJs are required to consider the following factors

in weighing medical opinions of treating and non-treating physicians, and provide

reasons for the weight assigned to each medical opinion:

> (1) Examining relationship
> (2) Treatment relationship
> (3) Supportability
> (4) Consistency
> (5) Specialization
> (6) Other relevant factors

20 C.F.R. § 416.927(c).

As relevant, 20 C.F.R. § 416.927(e)(2)(ii) provides

> When an administrative law judge considers findings of a State agency  medical
> or psychological consultant or other program physician, psychologist; or other
> medical specialist, the administrative law judge will evaluate the findings using
> the relevant factors in paragraphs (a) through (d) of this section, such as the
> consultant's medical specialty and expertise in our rules, the supporting evidence
> in the case record, supporting explanations the medical or psychological
> consultant provides, and any other factors relevant to the weighing of the
> opinions..

Accordingly, the treating physician rule provides the framework for reviewing agency

consultant findings.

It is the responsibility of the ALJ to weigh the record evidence and determine

which medical source opinion is supported by medical evidence in the record and

deserves more weight.  *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998) (where

medical opinions are inconsistent, ALJ's have discretion to apportion weight to the

opinions).  Here, however, the ALJ failed to comply with the factors required under the

treating physician rule (§ 416.927(c)), § 416.927(e)(2)(ii), and the order of the Appeal's Council. Specifically, although the ALJ found that "Dr. Totin's opinion is based on a thorough review of the [Plaintiff's] medical records, and [Dr. Totin's] opinion is consistent with the [Plaintiff's] treatment records, which show that [Plaintiff] was generally doing well [and] had the ability to attend and maintain focus" (R. 26), Dr. Totin's medical source statement on March 27, 2012, makes no indication to whether Dr. Totin included Plaintiff's depression, manic syndrome, regularly diagnosed bipolar syndrome (§ 12.04A(1)(2) or (3) (R. 572), or Plaintiff's post-traumatic stress (§ 12.06A5) (R. 574), within Dr. Totin's medical review. Moreover, Psychologist Ryan's updated Medical Source Statement on March 27, 2012, is based only on Psychologist Ryan's examinations of Plaintiff (R. 802), and not a review of more recent medical records pertinent to Plaintiff's visits to her treating psychiatrists and psychotherapists. As Plaintiff contends, the ALJ's granting of weight to the opinions of Dr. Totin and Psychologist Ryan thus fails to adhere to the guidance set forth under the treating physician rule (§ 416.927(e)(2)(ii)). Plaintiff's motion on this issue should therefore be GRANTED.

Plaintiff's further contention that the ALJ erred by not providing any explanation to the weight afforded to SDM Grabow's finding that Plaintiff was able to perform sedentary work with postural limitations is also without merit. Any error on the part of the ALJ to reconcile SDM Grabow's opinion with other medical findings in the record is harmless, as non-physician SDMs such as Grabow are not acceptable sources and, of consequence, SDM opinions are generally not afforded any weight. *See Goble v. Colvin,* 2016 WL 3179901, at *2 (W.D.N.Y. June 8, 2016) (citing *Lozama v. Colvin,* 2016

WL 1259411, at *5 (N.D.N.Y. Mar. 30, 2016) (SDMs are not acceptable medical sources and ALJ's should not afford any weight to their opinions at the administrative hearing level)).  Plaintiff's motion on this issue is therefore without merit.

**E.    Suitable Alternative Employment in the National Economy**

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.   *Parker*, 626 F.2d 225 at 231.   To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.   *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."   *Id.*   An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.   *Decker*, 647 F.2d at 294.

In addition to determining whether a disability claimant has the residual functional capacity to return to work, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[8]  *Id.* at 294.  This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296.  Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy.  *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

**VE testimony**

In this case, Plaintiff contends that the hypothetical questions posed by the ALJ to the VE were incomplete, because the ALJ failed to include Plaintiff's moderate limitation to concentration, persistence and pace, and Plaintiff's need to use the

---

[8] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

bathroom every hour as a result of Plaintiff's interstitial cystitis, Plaintiff's Memorandum at 10-11, and that such limitations result in Plaintiff not being able to complete a normal workday, and therefore preclude Plaintiff from being able to perform work such that Plaintiff is disabled. *Id.* Defendant maintains that the ALJ included all of Plaintiff's limitations in the ALJ's RFC assessment of Plaintiff, and the corresponding hypotheticals the ALJ proffered to the VE.  Defendant's Memorandum at 23.  Defendant further maintains that by finding that Plaintiff's non-exertional limitations did not significantly erode the occupational base for unskilled, sedentary work, the ALJ correctly applied Grid Rule 201.17 as a framework for finding Plaintiff not disabled.  Defendant's Memorandum at 23.

Upon remand, the Appeals Council directed the ALJ to identify and resolve conflicts between occupational evidence provided by the VE and the DOT, obtain testimony from the VE on the demands of Plaintiff's past relevant work, and pose hypothetical questions to the VE that include all of the limitations to Plaintiff's ability to perform work as supported by the record.  During the administrative hearing held on August 12, 2012, the ALJ posed a hypothetical  to the VE that included an individual, like Plaintiff, capable of a full range of sedentary work, but not capable of understanding or remembering complex instructions,  carrying out complex instructions, or using judgment to make complex work decisions, and able to deal with co-workers, supervisors and the public on an occasional basis.  (R. 128).  The ALJ then asked the VE to provide a list of jobs that such an individual would be capable of performing.  (R. 128).  Jobs that the VE opined included the positions of  switchboard operator, unskilled, sedentary work with a light exertional level, with 129,144 jobs available in the

national economy and 604 job positions available in the regional economy (R. 129),

ticket seller, unskilled, sedentary work with 183,836 jobs available in the national

economy and 792 jobs positions available in the regional economy, and telephone

survey worker, an unskilled, sedentary job with 32,439 job positions available in the

national economy and 1,085 jobs positions available in the regional economy.  (R. 130).

The ALJ then asked the VE to confirm that the VE's testimony was consistent with the

DOT.  *Id.*

Upon questioning, Plaintiff's counsel asked the VE whether an individual, similar

to Plaintiff, with all of the limitations posed to the VE within the ALJ's previously posed

hypothetical and the added limitation of being off task up to 25 percent of the day, would

be able to perform the jobs listed by the VE, which the VE opined would degrade the

individual's productivity to unacceptable levels.  (R. 131).  Plaintiff's counsel then posed

a new hypothetical that included the additional limitation of having to leaving the

individual's workstation at last once each hour to use the bathroom throughout the day,

which the VE opined would degrade an individual's productivity to unacceptable levels.

(R. 131).

As discussed, Discussion, *supra*, at 15-16, the ALJ's finding that Plaintiff had the

RFC to perform sedentary work, with limitations that included not being capable of

understanding or remembering complex instructions, carrying out complex instructions,

or using judgment to make complex work decisions, but able to deal with co-workers,

supervisors and the public on an occasional basis (R. 128), and the ALJ's resulting

hypotheticals to the VE based on the ALJ's RFC assessment of Plaintiff are supported

by substantial evidence in the record.  Any additional limitations posed to the ALJ by

Plaintiff are irrelevant because the ALJ already found insufficient evidence to support such limitations.  Discussion, *supra,* at 15-18.  As such, the ALJ's hypothetical to the VE is without error, and the ALJ may therefore rely on the VE's testimony, *see Dumas,* 712 F.2d at 1554.  Plaintiff's motion on this issue should be DENIED.

## <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion (Doc. No. 14) should be DENIED, Plaintiff's motion for remand for calculation of benefits (Doc. No. 9) should be GRANTED; Plaintiff's alternative motions for judgment on the pleadings should be GRANTED, and the matter should be remanded for calculation of benefits.

Respectfully submitted,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 30, 2016
            Buffalo, New York

27

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      August 30, 2016
            Buffalo, New York